Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,292-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DEMARIOUS HICKS                             Appellant

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Madison, Louisiana
Trial Court No. 185,577

Honorable Laurie Reis Brister, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

JAMES EDWARD PAXTON                    Counsel for Appellee
District Attorney

EDWIN MOBERLEY
BRADLEY T. SLOANE
Assistant District Attorneys

* * * * *

Before STONE, ROBINSON, and HUNTER, JJ.

**STONE, J.**

This appeal arises from the Sixth Judicial District Court, the Honorable Laurie Brister, presiding. Defendant, Demarious Hicks ("Hicks") was convicted by a jury of second-degree murder and attempted second-degree murder. He was sentenced to life imprisonment at hard labor without benefits for his second-degree murder conviction and fifty years at hard labor without benefits for his attempted second-degree murder conviction; both sentences were ordered to be served consecutively. On appeal, convictions and sentences were vacated and the matter was remanded for a new trial. Hicks' convictions were reinstated by the Louisiana Supreme Court and remanded to the trial court for further proceedings. Hicks now appeals a second time. For the reasons expressed herein, we vacate Hicks' convictions and sentences and remand this matter for a new trial.

## FACTS

Hicks was arrested on the morning of August 10, 2017, and subsequently charged on October 18, 2017, with the second-degree murder of Roderick Bowman and the attempted second-degree murder of Trashaun Smith. He pled not guilty to both counts and his jury trial commenced on November 15, 2021.

At the conclusion of trial, both the trial court and the state reiterated to the jury panel that only ten out of twelve votes were necessary to reach a verdict of guilty for both charges. The jury returned a guilty verdict on both counts, however, neither the state nor Hicks requested a poll of the jury before the jury was released.

Hicks timely appealed his conviction and sentences. This court overturned Hicks' conviction and remanded for a new trial after finding

there was no indication, from either the record or the court minutes, that the verdict was unanimous as required by *Ramos v. Louisiana,* 590 U.S. 83; 140 S. Ct. 1390; 206 L. Ed. 2d 583 (2020). [1] The state filed a writ with the Louisiana Supreme Court ("LASC") seeking to have the convictions and sentences reinstated. In a *per curiam,* the LASC reinstated Hicks' jury verdict and remanded the matter to the trial court with instructions to conduct further proceedings to ascertain whether the verdicts were unanimous.[2]

In compliance with the LASC order, the trial court conducted a hearing on February 16, 2024, wherein the jury foreperson, Daniel Stanley ("Mr. Stanley"), was sworn and testified that the guilty verdicts were unanimous on both counts. The following questioning took place at the hearing:

\*\*\*

[THE COURT]: And, were you one of the 12 Jurors that was chosen to serve on that Jury?

[MR STANLEY]: Yes, ma'am.

[THE COURT]: And, when it was time for the Jury to deliberate, were you then selected as foreperson or foreman of the Jury?

[MR STANLEY]: Yes, ma'am.

[THE COURT]: And do you recall the verdicts that the Jury reached?

[MR STANLEY]: Yes, ma'am.

---

[1] See, *State v. Hicks*, 55,010 (La. App. 2 Cir. 5/10/23); 361 So. 3d 1213, *reh'g denied* (6/22/23*), writ granted, decision rev'd,* 23-00969 (La. 2/6/24); 378 So. 3d 743.

[2] See, *State v. Hicks*, 23-00969 (La. 2/6/24); 378 So. 3d 743.

[THE COURT]: All right. And, ah, were you the one that delivered those verdicts to the trial court, to myself, at the conclusion of the trial?

[MR STANLEY]: I was, yes, ma'am.

[THE COURT]: All right. And can you tell me what those verdicts were?

[MR STANLEY]: They were both guilty.

[THE COURT]: Guilty to both charges, to

[MR STANLEY]: Both charges, yes ma'am.

[THE COURT]: second degree murder and the attempted second degree murder.

[MR STANLEY]: Yes, ma'am.

[THE COURT]: And are you aware if both of those verdicts were unanimous?

[MR STANLEY]: Yes, ma'am.

[THE COURT]: And were they unanimous?

[MR STANLEY]: Ah, yes ma'am, they were both unanimous.

[THE COURT]: Okay. All right then. I don't have any other questions then. Ah, you, you know that the verdict to second degree murder was unanimous and the verdict to attempted second degree murder was unanimous?

[MR STANLEY]: Correct, yes ma'am.

[THE COURT]: And you know that was being the foreperson of the Jury?

[MR STANLEY]: Correct, yes ma'am.

[THE COURT]: And that was delivered to the Court?

[MR STANLEY]: Yes ma'am.

[THE COURT]: All right, you may step down Mr. Stanley.

***

No other witness or juror testified.

3

When defense counsel for Hicks requested to ask the jury foreperson a question, the trial court responded:

> "…My understanding of and appreciation of the law that I've studied is that, that's not allowed. I think the instructions I received from the Supreme Court is that the Court was to conduct a hearing and that I'm to make a decision and ascertain whether or not the verdicts were unanimous. We have the testimony of the foreperson of the Jury that stated the verdicts were unanimous. So I don't, I don't believe it's proper for me to open the door and allow questioning."

to which defense counsel requested that his objection be noted for the record regarding not being allowed to question the jury foreperson. Neither the state nor the defense questioned the witness.

The trial court accepted the sworn testimony of Mr. Stanley, alone, determining that the verdicts on both counts were unanimous. The trial court also found that Hicks was not prejudiced and suffered no harm by the erroneous jury instruction. Hicks now appeals his convictions for a second time.

## DISCUSSION

Hicks asserts there was no genuine effort by the trial court to determine whether the decision of the jury was unanimous due to its sole reliance on the testimony of one juror, albeit, the jury foreperson to make its determination. Hicks argues that defense counsel should have been allowed to inquire into the mechanics of voting, i.e., whether there was a voice vote, a show of hands, whether individual jurors wrote their verdicts, etc., as this type of questioning would have allowed counsel to ascertain whether Mr. Stanley remembered the events of jury deliberations or was even able to legally speak on behalf of a jury that was discharged for nearly 3 years prior to his testimony. Specifically, whether Mr. Stanley knew about the previous

court ruling and whether he may have considered what was at stake in the event a single juror had not voted guilty.

In response, the state argues that Hicks did not meet his burden of proving his guilty verdicts were not unanimous. The only direct evidence in the record relating to the unanimous verdicts is Mr. Stanley's testimony, therefore, his *Ramos* claim cannot succeed.

In *Ramos, supra,* the United States Supreme Court expressly held that the right to a jury trial under the Sixth Amendment to the U.S. Constitution, incorporated against the states by way of the Fourteenth Amendment to the U.S. Constitution, requires a unanimous verdict to convict a defendant of a serious offense in both federal and state courts. The Louisiana Supreme Court has previously held that a nonunanimous jury issue is an error patent that an appellate court must review. *State v. Corn*, 19-01892 (La. 6/3/20), 296 So. 3d 1043. The record must clearly show that each individual juror's vote agrees with the verdict of the whole jury, and thus, the verdict is in fact unanimous. *Ramos, supra.*

We find that the process utilized by the trial court, i.e., the query by the trial court alone, was inadequate and rudimentary at best. An assertion by the jury foreperson as to the unanimity of the jury's verdict would not have been sufficient during the trial; likewise, a post-trial assertion cannot replace the crucial factual confirmation by each individual juror. *State v. Savage*, 55,710 (La. App. 2 Cir. 7/17/24); 399 So. 3d 492. Mere affirmative responses by Mr. Stanley *cannot* be sufficient to overcome the damage occasioned by the erroneous jury instructions — nor should it become the standard. Is the majority to presume that Mr. Stanley polled the jury, recorded their individual votes, or remembered — after a significant passage

5

of time — how eleven other jurors voted? Surely, Mr. Stanley remembers his *own* vote, but it is absurd for us to presume that he remembers the individual votes of his fellow jurors. At trial, the jury foreperson has the presence and support of eleven other jurors when the verdict is rendered. Here, Mr. Stanley was placed in the vulnerable position to essentially render the verdicts a second time — but this time, alone. There is no way for us to know with reasonable certainty that the vote for both counts were unanimous based on the trial court's questioning of Mr. Stanley.

Referencing the dissent in *Savage, supra.,* jury instructions, by their very nature, set the tone for jury deliberations. The right to a trial by jury reflects a profound judgment about the way in which law should be enforced and justice administered. *Duncan v. Louisiana*, 391 U.S., at 155, 88 S. Ct., at 1451*; Sullivan v. Louisiana*, 508 U.S. 275; 113 S. Ct. 2078; 124 L.Ed.2d 182 (1993). By instructing the jury that only ten members were required to reach a verdict, the trial court effectively undermined the foundation of jury unanimity in both our federal and state constitutions. La. Const. art. I § 17. Regretfully, when errors of this magnitude deviate from constitutional mandates, the integrity of the trial process is compromised.

While there is perhaps limited guidance as to what constitutes a sufficient effort to determine jury unanimity, we find error in the trial court's denial of the defense request to question Mr. Stanley. Additionally, we reject the state's argument that there is no evidence in the record showing the guilty verdicts were not unanimous, and further note that the record shows that Hicks was deprived of the opportunity to ask any questions of the jury foreperson and that improper jury instructions were given.

6

The crimes committed by Hicks in this case occurred in 2017. By the time his trial began in 2021, *Ramos* was indeed the governing precedent for verdicts in jury trials. An instruction that the verdict should be unanimous was *require*d here. We find the record remains devoid of any indication that the jury's verdict was unanimous as the trial court's methods were not sufficient. Accordingly, we again, vacate Hicks' convictions and sentences and pretermit discussion of his remaining assignments of error.

## CONCLUSION

For the aforementioned reasons, Hicks' convictions and sentences for the second-degree murder and attempted second-degree murder are vacated and the matter is remanded for a new trial.

**CONVICTION AND SENTENCE VACATED; REMANDED FOR NEW TRIAL.**